UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HELEN ELAINE WEST, | |
| Plaintiff, | 23-CV-2256 (LTS) |
| -against- | ORDER OF DISMISSAL |
| THE CITY OF NEW YORK, et al., | |
| Defendants. | |

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, who resides in Alabama and is proceeding *pro se* and *in forma pauperis* ("IFP"), filed this complaint alleging that Defendants violated her rights. This is Plaintiff's second action in this court asserting claims about (1) her allegedly improper placement, beginning in 2011, in homeless shelters in New York City for persons diagnosed as mentally ill and chemically addicted (MICA), and (2) the lack of adequate assistance from other social services agencies during that period. *See West v. City of New York*, No. 17-CV-2369 (CM) (S.D.N.Y. Nov. 3, 2017) ("*West I*") (dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)).

By order dated May 30, 2023, the Court directed Plaintiff to amend her complaint in this action to address deficiencies in her original pleading. After requesting an extension of time, Plaintiff filed an amended complaint on September 25, 2023, and the Court has reviewed it. In her amended complaint, Plaintiff asserts claims against the City of New York, the Department of Health and Mental Hygiene (DOHMH), and thirteen individuals working for social services agencies. For the reasons set forth below, the action is dismissed.

## STANDARD OF REVIEW

The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks

monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B);

*see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must

also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised.

*See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to

construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret

them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470

F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in

original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits –

to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil

Procedure, which requires a complaint to make a short and plain statement showing that the

pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially

plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that

the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must

accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79

(2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of

action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating

legal conclusions from well-pleaded factual allegations, the Court must determine whether those

facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

In *West I*, filed in 2017, Plaintiff Helen West alleged that during a difficult period of her

life that began in or before 2011, she lost her job as a teacher, lost her basement apartment, was

placed in a homeless shelter that was inadequate and inappropriate, and was "rough[ed] up" by someone named Monae Levy. *See West*, No. 17-CV-2369 (ECF 2).[1]

Judge Colleen McMahon issued a 15-page order in *West I* describing the deficiencies in Plaintiff's complaint and granting Plaintiff leave to file an amended complaint. The order explained that Plaintiff did not state a claim: (1) against the City of New York because she had not alleged facts showing any policy, custom, or practice that caused a violation of her rights; (2) for a violation of due process because she had no protected interest in placement in a particular type of shelter, because administrative and state processes had been available to her, and because the government has no general duty under the U.S. Constitution to protect an individual from harm, *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989); (3) for discrimination based on her "perceived" white race in violation of the Equal Protection Clause, 42 U.S.C. § 1981, or the Fair Housing Act, because she failed to plead sufficient facts; and (4) for a violation of her First Amendment rights because she not allege any causal connection between her speech (reporting another teacher who allegedly slapped a kindergartener) and any violation of her rights in the shelter system. *West*, No. 17-CV-2369 (ECF 5). Chief Judge McMahon extended the deadline for Plaintiff to amend her complaint (ECF 7) and ultimately dismissed the action on November 3, 2017, after Plaintiff failed to submit an amended complaint. In the order of dismissal, Judge McMahon held that the "action, filed *in*

---

[1] Plaintiff attached to the complaint in *West I* a pleading indicating that she had also filed suit in 2015 in the Supreme Court of the State of New York, New York County, against several New York City agencies (the Department of Education; Department of Homeless Services (DHS); the Human Resources Administration (HRA)). In the state court action, she asserted claims for "torture and ill treatment" in a MICA shelter. *Id.* at 10. The results of that action are unclear.

*forma pauperis* pursuant to 28 U.S.C. § 1915(a)(1), is dismissed for failure to state a claim[.] 28 U.S.C. § 1915(e)(2)(B)(ii)." (ECF 8 at 1.)

Approximately six years after Plaintiff filed *West I*, she brought this new action, on March 16, 2023, asserting many of the same claims arising since 2011. She again sued the City of New York, and also named as defendants city agencies (DOHMH; DHS; HRA; Housing Preservation and Development (HPD)), and Lantern Community Services. The Court dismissed Plaintiff's complaint for failure to state a claim and granted her leave to file an amended complaint. (ECF 6.) The Court noted, among other things, that (1) in determining whether to reassert her claims, Plaintiff should consider whether the claims were time barred and whether there was any basis for equitable tolling; and (2) her allegations that she had temporarily left New York City during the pandemic were insufficient to plead that she was a citizen of Alabama for purposes of diversity jurisdiction.[2]

In Plaintiff's amended complaint, she alleges that her claims arose from 2011-2020. She sues the City of New York, the DOHMH, and thirteen individual defendants whom she identifies as having formerly been employed at shelters (Stadium Shelter; Lantern Community Services; CAMBA Broadway House) or other social services agencies with which she interacted.

Plaintiff alleges that she was harmed by policies of the City of New York. First, the City allegedly caused her homelessness due to its policy of failing to penalize landlords of illegal basement apartments. (ECF 9 at 6.) Plaintiff reasons that, because no "vacate order" was issued for her illegal basement apartment, she did not receive relocation assistance that she believes would have been available to her from HPD if a vacate order had issued, and she therefore ended

---

[2] Plaintiff's complaint did not indicate that she had previously litigated the claims arising from her time in New York City shelters beginning in 2011, and the Court was, at the time of issuing the order to amend, unaware of *West I*.

up "in the shelter system." (*Id.*) Second, Plaintiff alleges generally that the City of New York has

a long history of "not meeting reasonable accommodations for clients of the shelter system,"

though she does not identify any basis for requiring accommodations or the type of

accommodations to which she is referring. (*Id.*) Third, the City of New York is "known for hiring

under qualified people." (*Id.*) Finally, Plaintiff alleges that the City of New York fails to allow

individuals "to choose the type or actual shelter that is best for them." (*Id.* at 6.)

      Plaintiff reiterates her claims that misinformation in various records (including errors

stating that her 2011 eviction was due to illegal activity and that she suffered mental illness)

caused her to be misclassified in terms of her shelter placement. Plaintiff also reasserts her

claims litigated in *West I* regarding Monae Levy's assault on her and harassment and other

difficulties that she suffered in the shelter system.

      Plaintiff alleges that an HRA representative in Housing Court in Brooklyn, New York,

provided "zero help" and told Plaintiff that she should join her daughter in California rather than

entering the shelter system. (*Id.* at 6.)  Plaintiff "reached out to Susan Nayowith and DHS

multiple times seeking help" but did not receive help, even though Defendant Nayowith

allegedly was aware at that time that a different shelter would have been more suitable for

Plaintiff. (*Id.* at 7.)

      Defendant Lindsay Lambert, Plaintiff's assigned case manager at CAMBA Broadway

House, told Plaintiff that the only housing available "was supportive housing for people who

were mentally ill or chemically addicted or both." (*Id.* at 7-8.) Lambert told Plaintiff that

"Section 8 did not exist," and included "blatant lie[s]" in case notes suggesting that Plaintiff was

delusional. (*Id.* at 8.) Another resident, who "was of a darker skin color" than Plaintiff told the

security guard that she "got Section 8." (*Id.* at 9.) Plaintiff states that she learned that she would not get housing from CAMBA "because she was the wrong color." (*Id.*)

Defendant Diana Santos committed "absolute fraud" by misleading Plaintiff and failing to explain restrictions on the housing provided at Prospero Hall; specifically, Plaintiff "was not told" that she was entering into a "case management / employment contract." (*Id.* at 9.) Moreover, Santos showed the apartment to a prospective tenant named Tammy, who is Black, and Tammy rejected the apartment because it faced the train tracks. However, Santos only showed Plaintiff an apartment that she stated would be "similar" to the one Plaintiff would be assigned, and did not show Plaintiff the actual apartment. Plaintiff contends that this constituted discrimination based on race.

Defendant Amy Berg made allegedly false statements on Plaintiff's Section 8 housing application that suggested that Plaintiff "was a very needy person" and was not "self-directed." (*Id.* at 10.) Plaintiff states that Santos, Tonia Cortes, and Amy Berg, all "cho[se] to lie" about the apartment at Prospero House. (*Id.*)

 Plaintiff includes many details demonstrating that she "did not get what she needed." (*Id.*) Plaintiff states that many individuals "never helped" her, including Tania Cortes, Brian Dickerson, Amy Berg, "Mr. Rogers," Harry Kennedy, Cory Hioska, Andrei Zatalokin, and George Rizzo. She also alleges generally that "[e]very single case manager and administrator who worked at every single shelter [that she] was at was blatantly negligent by not informing me of the slanderous labels that were in my file, as well as withholding procedures for transferring me to a suitable place . . . ." (*Id.* at 7.)

Plaintiff seeks to have her "reputation cleared," and to be compensated $10 million for "lost wages," lost property, and other suffering.

## DISCUSSION

**A.    Claims against City of New York**

1.    Claim Preclusion

Under the doctrine of claim preclusion, also known as "*res judicata*," a litigant may not bring a new case that includes claims or defenses that were, or could have been, raised in an earlier case in which the same parties were involved if that case resulted in a judgment on the merits. *Brown v. Felsen*, 442 U.S. 127, 131 (1979). Claim preclusion thus "prevents parties from raising issues that could have been raised and decided in a prior action – even if they were not actually litigated." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 898 F.3d 232, 236-37 (2d Cir. 2018)*, rev'd on other grounds,* 140 S. Ct. 1589 (2020)*.* Claim preclusion generally applies if: "(1) the prior decision was a final judgment on the merits, (2) the litigants were the same parties, (3) the prior court was of competent jurisdiction, and (4) the causes of action were the same." *In re Motors Liquidation Co.*, 943 F.3d 125, 130 (2d Cir. 2019) (citation and internal quotation marks omitted).[3]

To determine whether a claim could have been raised in an earlier action, courts look to whether the present claim arises out of the same transaction or series of transactions asserted in the earlier action, *see Pike v. Freeman,* 266 F.3d 78, 91 (2d Cir. 2001), or, in other words, whether facts essential to the second suit were present in the first suit, *NLRB v. United Techs. Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983). Claims are treated as the same if they "arise from the

---

[3] Although claim preclusion is an affirmative defense to be pleaded in a defendant's answer, *see* Fed. R. Civ. P. 8(c), the Court may raise the issue on its own initiative. *See, e.g.*, *Grieve v. Tamerin*, 269 F.3d 149, 154 (2d Cir. 2001) (affirming district court's *sua sponte* dismissal on grounds of preclusion because it involves "important interests of the public and the courts in avoiding repetitive litigation and potentially inconsistent decisions").

same transaction, or involve a common nucleus of operative facts." *Cayuga Nation v. Tanner*, 6 F.4th 361, 375 (2d Cir. 2021) (quoting *Lucky Brand Dungarees*, 140 S. Ct. at 1595) "A party cannot avoid the preclusive effect of *res judicata* by asserting a new theory or a different remedy." *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017) (internal quotation marks and citation omitted).

 Here, Plaintiff's earlier suit, *West I* – which alleged mistreatment, inadequate assistance, and racial discrimination by social service agencies and individuals during her period of homelessness beginning in 2011 –  resulted in a judgment on the merits. Plaintiff's complaint in *West I* was dismissed in its entirety, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim and judgment was entered by a court of competent jurisdiction. *West*, No. 17-CV-2369 (ECF 9). A "dismissal for failure to state a claim operates as 'a final judgment on the merits and thus has *res judicata* effects.'" *Garcia v. Superintendent of Great Meadow Corr. Facility*, 841 F.3d 581, 583 (2d Cir. 2016) (quoting *Berrios v. N.Y.C. Hous. Auth.*, 564 F.3d 130, 134 (2d Cir. 2009)).

 The City of New York was a defendant in *West I* and is a defendant in this action.[4] Plaintiff also asserted claims in both actions arising from the same facts – that is, her experiences in homeless shelters beginning in 2011. While Plaintiff alleges in the amended complaint now before the Court that her claims arose during a ten-year period between 2011-2021, and it is possible that she may be asserting some claim that arose after judgment was entered in *West I* in

---

[4] Plaintiff sues City of New York DHS employees, Defendants Susan Nayowith, George Rizzo, and Henry Kennedy. Insofar as Plaintiff sues them in an official capacity, rather than a personal capacity, the claims against them would be considered claims against the City of New York. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("A claim against a municipal employee in his or her official capacity may be treated as an action against the municipality itself."). Claims against these New York City employees in their official capacities thus would also barred by claim preclusion. The Court addresses the claims against them in their personal capacities below.

2017, many of the facts alleged are the same as those raised in *West I* and involve events that took place beginning in 2011. Plaintiff's claims against the City of New York (and its employees acting in an official capacity) that arise from these facts and took place before judgment entered in *West I* in 2017 are therefore barred by claim preclusion.

2.     Policies of City of New York

Because Plaintiff may be advancing some claim that arose after 2017, which could not have been included in *West I*, the Court addresses her allegations that policies of the City of New York caused violations of her constitutional rights. As Plaintiff has repeatedly been advised, to state a claim against a municipality under 42 U.S.C. § 1983, a plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997).

Here, Plaintiff has alleged that she was harmed by several City of New York policies: (1) the failure to regulate basement apartments (which meant that there was no "vacate order" for her apartment, which might have qualified her for certain housing assistance); (2) the failure to offer "reasonable accommodations for clients of the shelter system"; (3) hiring "under qualified people" who are not "sufficiently trained"; and (4) not allowing individuals to choose their own shelter placement. (ECF 9 at 6.) First, the allegations regarding Plaintiff's basement apartment appear to arise from facts that relate to her eviction in or around 2011. Because this claim was known to her at the time, it appears to be barred by the three-year limitations period for a claim under Section 1983. These facts also do not allege the violation of any right protected by the U.S. Constitution.

Second, Plaintiff's general allegation that employees lacked training is insufficient to state a claim against a municipality. *See, e.g.*, *City of Canton v. Harris*, 489 U.S. 378, 391 (1989) ("[I]t [will not] suffice to prove that an injury or accident could have been avoided if [an employee] had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury."). General allegations that employees were unqualified or untrained, or vague allegations that unspecified accommodations were not provided, do not state a claim on which relief can be granted.

Finally, Plaintiff's allegation that she was unable to select a shelter is also insufficient to state a claim for a violation of a constitutional right, because there is no right to placement in a particular type of shelter. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Plaintiff thus fails to state a claim on which relief can be granted under Section 1983 against the City of New York.

The Court therefore dismisses Plaintiff's claims against the City of New York based on claim preclusion and for failure to state a claim on which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

## B.    DOHMH

The Court advised Plaintiff in the Order to Amend that her original complaint failed to state a claim against the DOHMH under 42 U.S.C. § 1983, and that if she named this defendant in her amended complaint, she must plead facts about how DOHMH's policies, customs, or practices, caused a violation of her federal rights. In the amended complaint, Plaintiff alleges that DOHMH "does not require shelters to tell people that they are going to be in these case management programs and that the housing they're going to be in is not going to be anything like normal housing." (ECF 9 at 10.) This allegation does not plead a violation of a right protected by the U.S. Constitution or federal law. Plaintiff thus fails to state a claim under

Section 1983 against DOHMH, and the Court dismisses any claims that Plaintiff is bringing

against DOHMH under Section 1983. 28 U.S.C. §1915(e)(2)(B)(ii).

**C.     Individual Defendants**

1.      Federal claims under 42 U.S.C. § 1983

a. Employees of private entities

Plaintiff asserts claims against individual employees of private entities providing housing

and social services, including Lantern Community Services, CAMBA, Park Avenue Women's

Shelter, and Acacia Network/Stadium Shelter. This includes Defendants Brian Dickerson, Diana

Santos, Amy Berg, and Cory Hioska (all from Lantern); Lindsay Lambert and Stephanie Purnell

(CAMBA); Tanya Cortes (Park Avenue); Andrei Zatalokin, and "Mr. Rogers" (Acacia); and

Naomi Kimmel ("therapist").

A claim for relief under Section 1983 must allege facts showing that each defendant acted

under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983.

Private parties therefore generally are not liable under the statute. *Sykes v. Bank of Am.*, 723 F.3d

399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S.

288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002)

("[T]he United States Constitution regulates only the Government, not private parties.").

Because these individuals are alleged to work for private nongovernmental entities, and

the facts alleged do not suggest that their actions are attributable to the state, Plaintiff cannot

state a claim against these individuals under Section 1983 for any alleged violation of her

constitutional rights.[5] The Court therefore dismisses Plaintiff's Section 1983 claims against

---

[5] Although the actions of a private entity are attributable to the state for purposes of
Section 1983 in certain situations, *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d
255, 257 (2d Cir. 2008) (describing "public function" "joint action," and "compulsion" tests for
state action), the "provision of homeless services by a private organization, even under contract

Defendants Dickerson, Santos, Berg, Hioska, Lambert, Purnell, Cortes, Zatalokin, Rogers, and Kimmel for failure to state a claim on which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

        b.      DHS employees

Plaintiff also sues former DHS employees Susan Nayowith, George Rizzo, and Harry Kennedy. She alleges that Defendant Nayowith "withheld help & procedures for proper shelter placement and help with securing housing." (ECF 9 at 15.) Defendants Rizzo and Kennedy allegedly "did not help [Plaintiff] when [she] complained about Tillary [shelter] & how afraid [she] was." (*Id.* at 18.)

As Judge McMahon explained in *West I*, Plaintiff's allegations that she "did not receive staff assistance . . . fail to state claims for deprivation of due process. The government does not have a general duty under the Constitution to protect an individual from harm." *West I*, 17-CV-2369 (ECF 5 at 7) (citing *DeShaney*, 489 U.S. at 195-96). Judge McMahon also identified the two recognized exceptions to the general rule that there is no constitutional duty to provide assistance. The first exception is where the government forcibly takes someone into its custody, and the second is where the government facilitates harm (such as by preventing someone from acting on their own). *Id.*

---

with the state or where subject to governmental regulation, does not turn the private organization or its employees into state actors." *Ortega v. Samaritan Vill. Myrtle Ave. Men's Shelter*, No. 18-CV-5995, 2020 WL 1043305, *4 (E.D.N.Y. Mar. 4, 2020) (internal quotation marks and citation omitted); *Young v. Halle Hous. Assocs., L.P.*, 152 F. Supp. 2d 355, 365 (S.D.N.Y. 2001) ("[T]he provision of housing, for the poor or for anyone else, has never been the exclusive preserve for the state" and thus is not a public function). Plaintiff makes no allegations that the challenged actions (false notes in her case files, inappropriate shelter placement, general failure to assist) are "fairly attributable" to the state. *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (citation omitted) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)); *Young*, 152 F. Supp. 2d at 364 ("[T]he crucial relationship for a finding of state action is between the governmental entity and the action taken by the private entity, not between the governmental entity and the private actor.").

Here, under *DeShaney*, Plaintiff's allegations that the assistance that DHS provided was inadequate do not state a claim for a violation of rights under the U.S. Constitution. Moreover, Plaintiff's allegations do not suggest that she was within any exception to this rule because DHS did not require Plaintiff to remain in its custody or prevent her from acting on her own. The allegations in the amended complaint, that Defendants Nayowith, Rizzo, and Kennedy did not help Plaintiff, thus fail to state a claim under Section 1983 on which relief can be granted.

### D.     State law claims

A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Here, the Court has dismissed all of the federal claims over which the Court has original jurisdiction.

However, Plaintiff also invokes the Court's diversity jurisdiction, 28 U.S.C. § 1332. As explained in the order to amend (ECF 6), to establish diversity jurisdiction under Section 1332, a plaintiff must allege that the plaintiff and the defendant are citizens of different states. *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998). In addition, the plaintiff must allege to a "reasonable probability" that the claim is in excess of the sum or value of $75,000.00, the statutory jurisdictional amount. *See* 28 U.S.C. § 1332(a); *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006).

For purposes of diversity jurisdiction, "[a]n individual's citizenship, within the meaning of the diversity statue, is determined by [her] domicile." *Johnson v. Smithsonian*, 4 F. App'x 69, 70 (2d Cir. 2001) (citing *Palazzo v. Corio*, 232 F.3d 88, 42 (2d Cir. 2000)). "In general, domicile has two components: (1) physical presence in a state, and (2) the intent to make the state a

home." *LoCurto v. LoCurto*, No. 07-CV-8238 (NRB), 2008 WL 4410091, at *3 (S.D.N.Y. Sept. 25, 2008). A corporation is a citizen, for purposes of Section 1332, of both the State where it is incorporated and the State where it has its principal place of business. *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010). A plaintiff bears the burden of establishing that diversity jurisdiction existed at the time the action was commenced. *Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998).

Plaintiff alleges that she is a citizen of Alabama.[6] (ECF 9 at 2.) She does not plead facts about where defendants are domiciled. Although she identifies many defendants as previously having been employed in New York City at some point during the 2011-2021 period when her claims arose, she does not allege facts about where any defendant was domiciled at the time Plaintiff brought this action. Plaintiff thus fails to satisfy her burden of pleading facts showing diversity of citizenship.

The Court therefore declines to exercise its supplemental jurisdiction of any state-law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

### E.     Leave to amend

District courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its defects, but leave to amend may be denied if the plaintiff has already been given an opportunity

---

[6] In her original complaint, Plaintiff had not adequately pleaded her citizenship in Alabama because she merely alleged that she had been "helped to temporarily leave NYC during COVID and was able to find affordable housing in a safe place." (ECF 1 at 6.) Plaintiff's amended complaint gives no indication that her residence in Alabama is temporary, which would be a basis for concluding that she had not abandoned her prior citizenship in New York. *See Palazzo*, 232 F.3d at 42 (holding that domicile "is presumed to continue in the same place, absent sufficient evidence of a change").

to amend but has failed to cure the complaint's deficiencies. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Here, Plaintiff has already filed two suits arising from her time in New York City homeless shelters beginning in 2011, and was granted leave to amend in each. Because the amended complaint gives no indication that the defects in Plaintiff's amended complaint could be cured with a further amendment, the Court declines to grant Plaintiff another opportunity to amend.

## CONCLUSION

The Court dismisses Plaintiff's federal claims for failure to state a claim on which relief can be granted and as barred be claim preclusion. 28 U.S.C. § 1915(e)(2)(B)(ii). The Court declines, under 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction of Plaintiff's state law claims.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of Court is directed to enter judgment in this matter.

SO ORDERED.

 Dated:   April 15, 2024
          New York, New York

                                      /s/ Laura Taylor Swain
                                      LAURA TAYLOR SWAIN
                                      Chief United States District Judge